IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SMARTBANK, *a Tennessee banking* )
*Corporation, successor by merger to* )
*Capstone Bank*, )
    Plaintiff, )
     )
v. ) CIVIL ACTION NO. 1:18-00246-KD-N
     )
THE PUBLIC PARK AND RECREATION )
BOARD OF WASHINGTON COUNTY, *an* )
*Alabama non-profit corporation also* )
*known as Washington County Parks and* )
*Recreation Board, et al.*, )
    Defendants. )

## REPORT AND RECOMMENDATION

This action is before the Court on the motion to abstain and dismiss (Doc. 27), and separate supporting memorandum (Doc. 28), filed by Defendant the Public Park and Recreation Board of Washington County, a/k/a Washington County Parks and Recreation Board (the "Board").[1] The motion was referred to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b);

---

[1] While the Board's motion is ostensibly brought as one to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the undersigned finds that Rule inapplicable to the grounds for dismissal raised. The undersigned agrees with the observation of a New Jersey district judge that "a motion to abstain based on a concurrent case pending in state court does not fit neatly into any of the categories of motions enumerated in 12(b)—the challenge is neither the facial sufficiency of the complaint nor the factual basis pled in the complaint. Likewise, it cannot be properly characterized as a motion based on a lack of jurisdiction. Rather, [a *Brillhart-Wilton*] abstention motion is a function of the Court's discretion to promote wise judicial administration." *Sperry Assocs. Fed. Credit Union v. Cumis Ins. Soc., Inc.*, No. CIV. 10-29 (DRD), 2010 WL 2925924, at *4 (D.N.J. July 21, 2010) (citation and quotation omitted) (holding "that a motion to abstain is not a Rule 12(b) motion").

(8/7/2018 electronic reference). Plaintiff SmartBank timely filed a response (Doc. 33) in opposition to the motion, and the Board timely filed a reply (Doc. 34) to the response. SmartBank and the Board have also filed supplemental briefs (Docs. 38, 41) in response to the undersigned's order inviting them to do so (Doc. 36). The motion is now under submission. (*See id.*). Upon consideration, the undersigned finds that the Board's motion to abstain and dismiss (Doc. 27) is due to be **GRANTED in part** and **DENIED in part**.

## I.  *Background*

SmartBank initiated this action by filing a complaint (Docs. 1, 2) with the Court on May 31, 2018. According to SmartBank's allegations, Defendant Laura Taylor served as Revenue Commissioner of Washington County, Alabama, from 1991 until her retirement in 2015. (Doc. 1, ¶ 9). Both during and after her tenure as Revenue Commissioner, Laura Taylor also served as Secretary-Treasurer of the Board, a non-profit entity that provides funding for parks, recreation facilities, and other services for Washington County citizens. (*Id.*, ¶ 10). The Board maintained a checking account at SmartBank ("the Board Account"), and checks drawn from that account requiring the signature of at least one authorized signer, of which Laura Taylor was one of three. (*Id.*, ¶¶ 10-11). Between February 2013 and October 2015, SmartBank mailed monthly statements for the Board Account to the post office box of the Washington County Revenue Commissioner, the address designated in the account agreement. (*Id.*, ¶ 13). After Laura Taylor's retirement as Revenue Commissioner in October 2015, SmartBank mailed the account statements to her home address. (*Id.*).

In 2013, SmartBank extended a loan of $34,000.00 to the Board (the "Board Loan"), which was subsequently renewed with additional borrowed funds multiple times. (*Id.*, ¶ 27). The last renewal and additional advance occurred on June 26, 2017, in the amount of $42,391.43, with interest accruing at the rate of 4.00% *per annum*. (*Id.*). Loan proceeds were deposited into the Board Account, and loan payments were debited automatically from the Board Account. (*Id.*, ¶ 31).

In April 2018, Laura Taylor was charged with four counts of possession of a forged instrument for checks drawn from the Board Account. (*Id.*, ¶ 14). That same month, two Board members notified SmartBank that Laura Taylor had engaged in unauthorized transactions and had misappropriated Board funds. (*Id.*, ¶ 18). After reviewing records of the Board Account, the Board determined that between February 2013 and March 2018, Laura Taylor misappropriated over $103,000.00 in account funds through various means, including disbursement of checks to unauthorized payees. (*Id.* at 6, ¶ 20). The Board also claims that Laura Taylor obtained the Board Loan through fraudulent means, including by providing SmartBank forged Board minutes and resolutions purportedly authorizing the loan, and by forging the signature of the Chairman of the Board. (*Id.*, ¶¶ 30, 32). On April 30, 2018, the Board's attorney sent a letter to SmartBank's counsel identifying checks totaling $51,125.49 that the Board believed to be unauthorized, and demanding that SmartBank re-credit that amount to the Board Account. (*Id.*, ¶ 23). The letter also demanded that SmartBank re-credit the Board Account for $106,680.74 in payments made on the Board Loan. (*Id.*, ¶ 33; Doc. 2-2).

## II.  *Analysis*

### A.  *Brillhart-Wilton* Abstention

> The Declaratory Judgment Act is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Wilton* [ *v. Seven Falls Co.*], 515 U.S. [277,] 287, 115 S. Ct. 2137[, 132 L. Ed. 2d 214 (1995)] (citations omitted).  It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so. *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942).  In fact,…the Supreme Court has expressed that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* at 495, 62 S. Ct. 1173. The Supreme Court has warned that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.* This warning should be heeded.

*Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (per curiam).

The Board's present motion seeks dismissal of Counts 1 through 3 of SmartBank's 11-count complaint under this discretionary authority to abstain from exercising jurisdiction over a declaratory judgment action in favor of ongoing parallel state court litigation (sometimes called *Brillhart-Wilton* or *Wilton-Brillhart*, abstention, after the two Supreme Court cases from which the doctrine derives). Counts 1 and 2 assert causes of action against the Board under the federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*  Count 1 seeks a declaratory judgment that SmartBank has no obligation to re-credit the Board Account for the fraudulent checks allegedly written by Laura Taylor because, "pursuant to Alabama Code § 7-4-406(c), (d), and (f), the Board's failure to examine its checking account

statements for the Board Account and report unauthorized transactions perpetrated by Laura Taylor to SmartBank precludes any recovery by the Board for losses allegedly incurred due to the illegal activity of Laura Taylor concerning the Board Account." (Doc. 1, ¶ 25). Count 2 seeks a declaratory judgment that the Board is not entitled to retain any of the Board Loan proceeds because the loan was fraudulently obtained by Laura Taylor, and that SmartBank is not obliged to re-credit to the Board Account any payments made on the Board Loan because it was given notice of those allegedly unauthorized transactions through its checking account statements but failed to report them. (*Id.*, ¶ 35). Count 3 asserts what appears to be a breach-of-contract claim for monetary damages against Laura Taylor for the amount currently owed on the Board Loan, plus attorney fees, asserting that she is liable for these amounts because her signature on the note for the 2017 loan renewal is genuine. (*Id.*, ¶¶ 37 – 40).[2]

The parallel state court litigation to which the Board asks this Court to defer was commenced by the Board on June 20, 2018, in the Circuit Court of Washington County, Alabama (Case No. CV-2018-900051), against SmartBank, Laura Taylor,

---

[2] Counts 4 through 11 assert causes of action against Defendants Laura, Fred, and Brad Taylor based on personal loans they obtained from SmartBank that are not at issue in Counts 1 through 3.

"It is well established that the Declaratory Judgment Act does not, of itself, confer jurisdiction upon federal courts." *Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 861–62 (11th Cir. 2008). However, SmartBank's complaint (Doc. 1) also alleges diversity of citizenship under 28 U.S.C § 1332(a) as a basis for subject matter jurisdiction, and the unchallenged allegations therein sufficiently show that SmartBank is a citizen of Tennessee while all Defendants are citizens of Alabama, and that the amount in controversy exceeds $75,000 exclusive of interests and costs.

and two SmartBank employees who are not parties to this action (hereinafter, "the Washington County Action"). (*See* Doc. 28-4). The complaint in the Washington County Action alleges the following 9 state law causes of action:

- Counts 1, 2, and 3 – Negligence, breach of fiduciary duty, and conversion, respectively, against all Washington County Action defendants, each count seeking compensatory damages for the deduction of payments on the Board Loan from the Board Account.

- Counts 4 and 5 – Negligence and breach of fiduciary duty, respectively, against all Washington County Action defendants, each count seeking compensatory damages for SmartBank's payment on the Board Account checks fraudulently issued by Laura Taylor.

- Count 6 – Conversion against Laura Taylor, based on the fraudulently issued checks.

- Counts 7 and 8 – Felony tort and violation of the Alabama Consumer Identity Protection Act, respectively, against Laura Taylor.

- Count 9 – Declaratory judgment against SmartBank, seeking a declaration that the Board Loan note is null and void, and that the Board does not owe SmartBank the balance left owing on the loan, due to Taylor's obtaining the loan by forging the Board Chairman's signature.

Initially, leaving aside whether it is appropriate for the Board to seek dismissal of a claim that is not directed against it, dismissal of Count 3 under *Brillhart-Wilton* abstention would be inappropriate because that count does not

assert a claim under the Declaratory Judgment Act. Rather, it asserts a state law breach-of-contract claim against Laura Taylor for monetary damages. As the Board has not argued any other rationale for dismissing Count 3, the undersigned finds that the Board's motion to dismiss is due to be **DENIED** as to Count 3. The undersigned now turns to the declaratory judgment claims directed against the Board in Counts 1 and 2.

### B. *Ameritas* Factors

Guided by the[] general principles expressed by the Supreme Court[ in *Brillhart* and *Wilton*], as well as the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts, [the Eleventh Circuit Court of Appeals has] provide[d] the following factors for consideration to aid district courts in balancing state and federal interests.

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>
> (2) whether the judgment in the federal declaratory action would settle the controversy;
>
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
>
> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;
>
> (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

[This] list is neither absolute nor is any one factor controlling; these are merely guideposts in furtherance of the Supreme Court's admonitions in *Brillhart* and *Wilton.*

*Ameritas*, 411 F.3d at 1330-31 (footnotes and some quotation marks omitted).[3] The Board addresses the *Ameritas* factors in its motion, and the undersigned will do the same.

---

[3] In announcing these factors, the *Ameritas* panel noted that the Eleventh Circuit "ha[d] not previously espoused a specific set of criteria to be applied in cases…where a district court is faced with a declaratory action brought in federal court on the basis of diversity and a subsequent parallel lawsuit on the merits is instituted in state court." 411 F.3d at 1331 n.4. While SmartBank complains that "the Board deliberately created competing litigation in state court based on the same core facts that form the basis of the instant case, with the intention of stripping the Court's jurisdiction over this first-filed case because the Board views the Circuit Court of Washington County as a more favorable venue" (Doc. 33 at 2), that consideration, even if true, is of no moment in the Court's analysis under *Ameritas*. *See Geico Gen. Ins. Co. v. Kastenolz*, 649 F. App'x 647, 650 (11th Cir. 2016) (per curiam) (unpublished) ("…Geico claims that the first-filed action in the present situation is not the Kastenholzes' state court action for bad faith and misrepresentation, but the declaratory judgment action it filed in federal court. Even if we were to agree with Geico's characterization, the *Ameritas* factors presuppose the existence of a prior filed federal declaratory action. *Ameritas,* 411 F.3d at 1329–1332 (establishing the nine factors for consideration where the plaintiff had filed a federal declaratory action before the defendant filed his state claim). Therefore, to the extent that Geico

**Factors 1 & 9 – The strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; and whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.**

The first *Ameritas* factor indisputably weighs in favor of abstention, as Alabama law controls the substantive claims in both this federal action and the Washington County Action. SmartBank does not claim that this action will involve any substantial application of federal, or any other jurisdiction's, law. While it does conclusorily claim that "there is no greater interest in the courts of the State of Alabama deciding the issues in the instant case" (Doc. 33 at 8 – 9), the undersigned disagrees. As the Eleventh Circuit has noted in discussing a federal district court's discretion to decline exercising pendent/supplemental jurisdiction over state law claims – a doctrine that, similar to *Brillhart/Wilton* abstention, was designed to "promote 'judicial economy, convenience and fairness to litigants' " – " '[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties by procuring for them a surer-footed reading of applicable law.' " *Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 531 (11th Cir. 2015) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

Similarly, the ninth *Ameritas* factor indisputably weighs in favor of abstention, as SmartBank's declaratory judgment counts "raise[] exclusively state law issues and implicate[] exclusively state law public policies, with no reference

relies on the actions' chronological order, its argument fails.").

whatsoever to federal common or statutory law." *Lexington Ins. Co.*, 434 F. Supp. 2d at 1242.

**Factors 2 & 6 – Whether the judgment in the federal declaratory action would settle the controversy; and whether there is an alternative remedy that is better or more effective.**

The declaratory judgment claims in Counts 1 and 2 essentially ask the Court to adjudicate issues that would otherwise be asserted as defenses to the Board's negligence, breach of fiduciary duty, and conversion claims against SmartBank in Counts 1 through 5 of the Washington County Action, all of which seek to recover as damages money paid by the Board to SmartBank as a result of Laura Taylor's alleged fraudulent activity. However, this Court's adjudication of those issues would appear to have no impact on the Board's declaratory judgment claim against SmartBank in Count 9 of the Washington County Action, nor would it resolve the Board's claims against the other defendants in the Washington County Action. As noted previously, Counts 1 through 5 of the Washington County Action are also asserted against two SmartBank employees who are not parties to this action. As another judge of this district has recognized, avoiding "piecemeal litigation…goes to the heart of the second *Ameritas* guidepost." *Westchester Surplus Lines Ins. Co. v. Romar House Ass'n, Inc.*, Civil Action No. 08–0455–WS–M, 2008 WL 5412937, at *5 (S.D. Ala. Dec. 29, 2008) (Steele, J.).

Similar concerns for avoiding overlapping/piecemeal litigation underlie the sixth factor as well. *See id.*, *6 ("The Magistrate Judge opined that having all of the claims arising from the Romar insurance dispute adjudicated in a single state court

proceeding would be 'more efficient,' such that th[e sixth *Ameritas*] guidepost favors abstention…[T]he Magistrate Judge has adequately explained his reasoning, inasmuch as having one court address the insurance-related issues arising from Hurricane Ivan's damage of Romar's property is clearly more efficient than having two courts address them redundantly in an overlapping, piecemeal, splintered approach."). The defenses to liability that SmartBank seeks this Court to declare can also be litigated as defenses in the Washington County Action, along with any others SmartBank may wish to assert. Having one court rule on all such defenses, rather than having dueling courts deciding different issues, is a "better or more effective remedy" than maintaining the present declaratory judgment counts.[4]

Accordingly, the second and sixth *Ameritas* factors both weigh in favor of abstention.

**Factor 3 – Whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue.**

The third *Ameritas* factor weighs in favor of retention of jurisdiction, as resolution of the declaratory counts in this action would serve a useful purpose in clarifying whether SmartBank has viable defenses to liability on most of the Board's Washington County Action claims against it. However, given that these issues are

---

[4] SmartBank appears to claim the Washington County Action is not a better choice because the presiding judge has a conflict and should recuse, as it has argued in a motion for recusal pending in that action. At most, the resolution of that issue will determine the judicial officer who will ultimately preside over the Washington County Action. If the motion is granted, a new judge will be assigned to the case, and any alleged taint to the state court proceedings removed. If the motion is denied and the current presiding judge remains assigned, the mere fact that SmartBank would prefer a different judge to preside over the action carries little weight in the abstention analysis.

also capable of being resolved in the Washington County Action, the undersigned does not attach significant weight to this factor.

**Factor 4 – Whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable.**

According to the Board:

In weeks following the discovery of [Laura Taylor's] fraud, attorneys for SmartBank and the Board exchanged information about the fraud and discussed possible resolution. These discussions led to a tolling agreement whereby the parties agreed to take no action for 30 days so that the parties could continue to exchange information and explore a resolution. During the continued discussions, the Board made it clear that it planned to file suit against Taylor at some point in the future. In response and while the tolling agreement was still in place, SmartBank filed this action. The bank provided no prior notice that it was filing the suit. The bank's attorney explained that the federal action was filed because the bank believed it was in a "race to judgment."

(Doc. 28 at 2. *See also* Doc. 28-1 at 1 – 4 (affidavit of Board Attorney E. Tatum Turner substantiating these claims)). SmartBank claims that "the party that agreed to 'take no action' for 30 days was **The Board**, not SmartBank." (Doc. 33 at 5 (emphasis in original)). However, in a May 3, 2018 letter emailed email to the Board's counsel E. Tatum Turner, an attorney for SmartBank states that "[t]his letter will serve as our request that the parties agree to a standstill period for the next thirty (30) days from the date of this letter in order to allow our investigation to be completed…and also to allow us to receive responses to claims under the bank's insurance policies." (Doc. 28-1 at 5 – 6). Turner responded by email on May 4 that the "Board will agree to take no further action for 30 days, if the Bank will agree that

the notice provisions under Title 7 are tolled during the Bank's investigation or that my letter of April 30 has provided sufficient notice under Title 7." (*Id*. at 5). Another attorney for SmartBank emailed Turner that same day stating: "We appreciate your client agreeing to take no further action for thirty (30) days. We further agree that any additional notice provisions under the UCC which have not already expired will be tolled during this 30-day period if they would otherwise expire during this 30-day period." (*Id*. at 7). SmartBank commenced this action on May 31, less than 30 days from the date of its letter requesting a "standstill period."

Leaving aside the intricacies of contract interpretation and offer/counteroffer/acceptance principles, on a practical level SmartBank's attorneys relied on a hypertechnical reading of Turner's email to reach its conclusion that only the Board agreed to take no further action, and SmartBank's response to Turner's email relied on, at best, ambiguous wording to disguise the manner in which it chose to interpret Turner's email. For SmartBank to now claim that "[a]t no time did [it] represent it would not file the instant action or refrain from any other activity beyond a deferred enforcement of statutory reporting deadlines under the UCC that would expire during the thirty-day period" (Doc. 33 at 6) is, at best, disingenuous. Moreover, as SmartBank acknowledges, "[o]n May 17, 2018, during the alleged 'tolling period,' the Board's attorney wrote to counsel for SmartBank" notifying him that the Board intended to sue Laura Taylor (*id*. at 6 – 7), thus putting SmartBank on notice that an Alabama citizen could have been included as a defendant in the

Board's lawsuit against SmartBank, thus precluding removal on the basis of diversity of citizenship under 28 U.S.C. § 1332(a).[5]

Based on the foregoing, the record convincingly shows that SmartBank's declaratory judgment claims against the Board were brought for purposes of "procedural fencing."[6] Thus, the fourth *Ameritas* factor weighs heavily in favor of abstention.

---

[5] Whether SmartBank's present lawsuit is also a "race to judgment" against Laura Taylor for purposes of creditor priority is irrelevant to the issue of whether this Court should abstain from hearing SmartBank's declaratory judgment claims against the Board, as abstention from those claims would have no effect on the pending claims against her.

[6] *See Lexington Ins. Co. v. Rolison*, 434 F. Supp. 2d 1228, 1240–41 (S.D. Ala. 2006) (Steele, J.) ("The 'procedural fencing' criterion does not require Rolison to announce bluntly 'I am going to sue you if you don't do what I want' before a filing can be deemed anticipatory. In any event, Lexington was plainly on notice that he intended to do just that. Therefore, Lexington's act of responding to this revelation by quickly filing a declaratory judgment action of its own cannot reasonably be construed as anything other than an anticipatory filing. While not dispositive, the fact that Lexington filed an anticipatory declaratory judgment action to secure a federal forum immediately upon learning that Rolison was planning a lawsuit of his own favors abstention." (footnotes omitted)); *Metro. Prop. & Cas. Ins. Co. v. Butler*, No. 4:15-CV-01244-JEO, 2016 WL 2939633, at *7 (N.D. Ala. May 20, 2016) (Ott, M.J.) ("Also favoring abstention is that it appears Metropolitan attempted to engage in " 'procedural fencing' – that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable." *Ameritas*, 411 F.3d at 1331. The materials before the court suggest, and Metropolitan does not deny, that Metropolitan's counsel was aware on July 21, 2015, that counsel for Butler and Donnetta was planning on filing a complaint in state court on or about July 24, 2015, based on Metropolitan's refusal to pay the policy claim. Metropolitan was further aware that the proposed state court action would include contract and tort claims under only state law against Metropolitan, Hamilton, Palmer, with the latter two parties being non-diverse to Butler and Donnetta. As a consequence, removal of the proposed state court action to federal court would generally be precluded, at least absent a showing of fraudulent joinder. And on the day that Butler and Donnetta's counsel had advised Metropolitan he intended to file the proposed state court action, Metropolitan filed this action for a declaratory judgment. Finally, following the filing

**Factor 5 – Whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction.**

The undersigned agrees with the Board that the fifth *Ameritas* factor "favors abstention given the potential for friction inherent in having double-tracked, near-identical litigation pending in both federal and state courts, such that the first court's ruling on a particular issue may have *res judicata* effect on the second court's ability to hear and decide the same issue, even if the second court disagrees with the first court's determinations. The risk of improper encroachment exists for the same reasons." *Lexington Ins. Co. v. Rolison*, 434 F. Supp. 2d 1228, 1241 (S.D. Ala. 2006) (Steele, J.).

**Factor 8 - Whether the state trial court is in a better position to evaluate those factual issues than is the federal court.**

The eighth *Ameritas* factor weighs in favor of abstention, as a significant amount of evidence and a substantial number of potential witnesses appear to be located in Washington County, while Mobile County, where this federal action is to be tried, has little to no connection to the underlying events. Given that this Court regularly hears cases with no substantial connection to Mobile County, however, this factor is not given significant weight.

---

of the State Court Action, Metropolitan has aggressively sought to stamp it out moving the state court to dismiss it by invoking Alabama's abatement statute, § 6-5-440, based on Metropolitan's having filed this federal action first. These circumstances indicate that Metropolitan perceived it would benefit by winning a "race to the courthouse," with designs on heading off having the parties' insurance controversy resolved by the Alabama state courts. Metropolitan's assertion that it is actually Defendants who have attempted to 'make an "end run" around this Court's jurisdiction by waiting until the declaratory judgment action was filed and then filing their state court complaint'…, is wholly implausible, revisionist history.").

As set out above, then, the *Ameritas* factors weigh overwhelmingly in favor of abstention in this case,[7] and SmartBank has failed to point to other factors that would tilt the scales in favor of retention of its declaratory judgment claims.

C.  **Alabama's Abatement Statute**

As the order for supplemental briefing (Doc. 36) indicated, the undersigned was concerned that SmartBank's pending motion to dismiss under Alabama's abatement statute, Ala. Code § 6–5–440, in the Washington County Action could have resulted in dismissal of the Board's claims against SmartBank, thus eliminating the state court action to which this Court would ostensibly defer if it were to abstain from hearing the present declaratory judgment counts. Under § 6-5-440, "[n]o plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case,…the pendency of the former is a good defense to the latter if commenced at different times." Regarding the abatement statute, the Alabama Supreme Court has explained:

> This Code section, by its plain language, forbids a party from prosecuting two actions for the "same cause" and against the "same party." … The phrase "courts of this state,' as used in § 6–5–440, includes all federal courts located in Alabama. This Court has consistently refused to allow a person to prosecute an action in a state court while another action on the same cause and against the same parties is pending in a federal court in this State. Additionally, a compulsory counterclaim is considered an 'action' for purposes of § 6–5–

---

[7] Because the other *Ameritas* factors weigh overwhelmingly in favor of abstention, the undersigned declines to address factor 7 ("whether the underlying factual issues are important to an informed resolution of the case") in detail, except to say that it does not weigh significantly in favor of retention.

> 440…[T]he obligation to assert compulsory counterclaims, when read in conjunction with § 6–5–440, Ala. Code 1975, which prohibits a party from prosecuting two actions for the same cause and against the same party, is tantamount to making the defendant with a compulsory counterclaim in the first action a 'plaintiff' in that action (for purposes of § 6–5–440) as of the time of its commencement. Thus, the defendant subject to the counterclaim rule who commences another action has violated the prohibition in § 6–5–440 against maintaining two actions for the same cause."

*Ex parte Nautilus Ins. Co.*, No. 1170170, 2018 WL 1548189, at *2–3 (Ala. Mar. 30, 2018) (citations and some quotations omitted) (alterations added). In *Nautilus*, the Alabama Supreme Court granted mandamus relief and directed the trial court to dismiss claims pending against the petitioner Nautilus, holding that "[b]ecause [a] federal action had been filed and was pending when [respondent] Precision filed the state action, and because the claims Precision asserted against Nautilus in the state action are compulsory counterclaims in the federal action, Nautilus has demonstrated that it has a clear legal right under § 6–5–440 to dismissal from the state action." *Id.*, *6. The "compulsory counterclaims" dismissed in in *Nautilus* are substantively and procedurally similar to the Board's claims against SmartBank in the Washington County Action.

However, the Board's supplemental brief drew the undersigned's attention to an important exception the Alabama Supreme Court has recognized to the abatement rule: "[W]hen a federal court abstains from hearing a case…, that case is not considered as an action being prosecuted, for purposes of § 6–5–440." *Ex parte*

*Norfolk S. Ry. Co.*, 992 So. 2d 1286, 1291 (Ala. 2008).[8] *See also New Hampshire Ins. Co. v. Cincinatti Ins. Co.*, Civil Action No. 1:14-99-CG-N, 2014 WL 5088202, at *7 (S.D. Ala. Oct. 9, 2014) (Granade, J.) ("Although NHIC argues the state action must be abated in favor of this action regardless of whether it is dismissed or stayed…, the Court disagrees. *See Ex parte Norfolk S. Ry. Co.*, 992 So.2d 1286, 1291 (Ala.2008) (holding that when a federal court abstains from hearing a case, that is not considered an action being prosecuted for purposes of § 6–5–440, and observing respondents would otherwise have no forum in which to present their claims).") (dismissing under *Brillhart-Wilton* abstention)). Accordingly, should the Court adopt this recommendation and dismiss SmartBank's declaratory judgment claims under *Brillhart-Wilton* abstention, it would appear that Alabama's abatement statute would not thereafter bar the Board from prosecuting its claims against SmartBank in the Washington County Action. Accordingly, the undersigned finds that the Board's motion to abstain and dismiss is due to be **GRANTED** as to Counts 1 and 2.

---

[8] In *Norfolk*, the federal court deferred to the later-filed state court action and stayed the federal action under the district court's discretionary abstention authority in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and the full text of *Norfolk*'s holding is: "[W]hen a federal court abstains from hearing a case <u>under the *Colorado River* doctrine</u>, that case is not considered as an action being prosecuted, for purposes of § 6–5–440." *Norfolk*, 992 So. 2d at 1291 (underlined emphasis added). While the undersigned has not located an Alabama appellate court case holding similarly for *Brillhart-Wilton* abstention, *Norfolk* described "the *Colorado River* abstention doctrine" as "a federal court stay[ing] an action when there is an ongoing parallel action in a state court" after "balanc[ing] its obligation to exercise jurisdiction over factors counseling against exercising that jurisdiction[,]" *id.* at 1289 (citing *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997-98 (11th Cir. 2004) (per curiam)), a description which is readily applied to *Brillhart-Wilton* abstention.

### III. *Conclusion*

In accordance with the foregoing analysis, and pursuant to § 636(b)(1)(B)-(C) and Rule 72(b)(1), it is **RECOMMENDED** that the Board's motion to abstain and dismiss (Doc. 27), be **DENIED** as to Count 3 and otherwise **GRANTED**, such that Counts 1 and 2 will be **DISMISSED without prejudice**.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the

disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 24th day of October 2018.

>  */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**